COMMONWEALTH *vs.* ANTONIO QUEZADA MEJIA.

Essex. April 3, 1990. - May 22, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Instructions to jury. *Self-Defense.*

At the trial of an indictment for manslaughter, the judge's instructions to
the jury on the law of self-defense which, when considered in their en-
tirety, could have misled the jury with respect to the burden of proof on
self-defense constituted prejudicial error. [494-497]

INDICTMENT found and returned in the Superior Court De-
partment on August 14, 1985.

The case was tried before *Peter F. Brady*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Thomas Drechsler (Frances L. Robinson* with him) for the
defendant.

*Robert J. Bender*, Assistant District Attorney *(Janice W.
Howe*, Assistant District Attorney, with him) for the
Commonwealth.

GREANEY, J. We granted further appellate review in this
case to decide whether the judge's instructions on self-de-
fense may have led the jury to think that the defendant had
to prove that he had acted in self-defense. Contrary to the
decision of the Appeals Court,[1] we conclude that the instruc-
tions had such potential. Accordingly, we reverse the defend-
ant's conviction of manslaughter.

There is no need to summarize the evidence presented at
the trial in great detail. The prosecution's evidence indicated

[1]The Appeals Court decided the appeal in an unpublished memorandum
and order according to Appeals Court Rule 1:28 procedure. See 27 Mass.
App. Ct. 1422 (1989).

that, after a disagreement, the defendant and the victim confronted each other. At the meeting, the victim had a baseball bat which he held "shorthand" (that is, hand on the wide end with the bat held behind his elbow). After the defendant declined an invitation to fight, the victim took a step toward the defendant, who shot a handgun into the air. When the victim took a second step forward, the defendant shot him once. Later, while getting into the police cruiser, the defendant said in Spanish, "If he lives, I'll kill him again."

The evidence in the defendant's case indicated that the dislike between the two men had stemmed from the victim's having insulted the defendant's wife. The disagreement culminated in the confrontation. As the victim, armed with a baseball bat, approached, the defendant indicated to the victim that he wanted no trouble. This effort to defuse the issue was rejected by the victim, who swung the bat at the defendant. The defendant fired a shot from his handgun into the air. When the victim came closer and swung the bat again, the defendant shot at the victim's body, grievously wounding him. The contentions before the jury, therefore, were, on the one hand, that the defendant had exceeded the boundaries of self-defense and had committed manslaughter, and, on the other hand, that he had acted justifiably to prevent a potentially deadly attack by the victim, who was approaching, armed with, and swinging, a baseball bat.

The evidence in this case required "instructions on the law of self-defense [that were] carefully prepared and delivered so as to eliminate any language that might convey to the jury the impression that [the] defendant must prove that he acted in self-defense." *Commonwealth* v. *Vidito*, 21 Mass. App. Ct. 332, 339 (1985). The instructions here were not satisfactory in this regard. The judge advised the jury that the "defense" in the case had been "narrowed to . . . self-defense[,]" and that as a "precondition to assert[ing] the defense of self-defense[,]" the defendant had to show that he had been assaulted. The judge addressed the issue at several points in the instructions in terms of "a right to use self-defense" on the defendant's part, and "the defense of self-defense [was]

available to this defendant." There were added references to the "claim" of self-defense. In focusing the jury's attention on the discrete elements of self-defense, the judge used considerable "finding" language. For example, the jury were told that it was necessary for them to find whether the victim had been the original assailant, whether the defendant had the right to use a weapon, and whether the defendant's use of the weapon was unreasonable. The jury were advised that these findings established "tests and limitations for the exercise of the right of self-defense[.]" The problem arose again when, after deliberating for several hours, the jury asked the judge to instruct them further on "the criteria for self-defense[.]" With minor modifications, the judge repeated his previous instructions to the jury on the subject.

The governing test requires that the instructions be examined in their entirety to determine their probable impact on the jury's perception of the fact-finding function. See *Commonwealth* v. *Albert*, 391 Mass. 853, 858 (1984); *Commonwealth* v. *Richards*, 384 Mass. 396, 399-400 (1981); *Commonwealth* v. *Simmons*, 383 Mass. 40, 44 (1981); *Commonwealth* v. *Stokes*, 374 Mass. 583, 590-591 (1978). It is true that, prior to discussing self-defense in his main instructions and in the supplemental instructions, the judge told the jury that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant had not acted in self-defense. However, there was no further mention of the burden of proof after the initial explanations; rather, there followed lengthy expositions of the law of self-defense which conveyed the impression "that it was the defendant who was required to wield the laboring oar" on the issue. *Connolly* v. *Commonwealth*, 377 Mass. 527, 534 (1979).

The instructions also tended to confuse the allocation of the appropriate burden of persuasion. The language framing self-defense in terms of a "claim," "right," or "defense," which necessitated "findings" as to the reasonableness in several particular respects of the defendant's behavior, suggested to the jury a need to conclude that the defendant's conduct was proper before they could return a not guilty ver-

dict. However, "[i]t is enough for acquittal that there be a reasonable doubt whether the defendant acted in proper self-defense." *Connolly* v. *Commonwealth, supra* at 534. See *Commonwealth* v. *Richards, supra* at 405. Therefore, despite introduction of the instructions by a correct statement of the Commonwealth's burden of proof, the explanation given of self-defense blurred the subject and disconnected several important factors involved in the consideration of the issue from the applicable burdens of proof and persuasion.

In considering whether a new trial is appropriate, we have also taken into account the standard of appellate review. When the main instructions on self-defense were completed, and again after the delivery of the supplemental instructions, the defendant's counsel objected with reasonable specificity to the infirmities he then detected in the instructions. Defense counsel told the judge that he thought the language used, particularly the finding language, might produce "confusion in the jurors' minds[,]" and that the "jurors may think [that] to acquit my client they have to . . . find and conclude [the facts]" described in the instructions. Defense counsel further pointed out that the defendant did not "have to prove anything[,]" and "[i]f [the jurors] have any reasonable doubt as to any of [the facts] they have to acquit my client." Defense counsel suggested that the problems might be cured if the judge reinstructed the jury on the Commonwealth's burdens of proof and persuasion immediately before their deliberations and redeliberations. The judge declined the requested relief.

Defense counsel carefully complied with the third sentence of section (b) of Mass. R. Crim. P. 24, 378 Mass. 895 (1979), which states that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." The objections in this case indicate that defense counsel felt that the jury had not received competent guidance on the legal principles governing the issue of self-de-

fense.[2] The standard of review, therefore, is one of prejudicial error rather than the more difficult standard (from a defendant's point of view) of whether the criticized passages of the instructions created a substantial likelihood of a miscarriage of justice.

Self-defense is a sensitive part of the jury instructions in a criminal trial, and inappropriate language in the instructions can readily lead to a result in which an appellate court lacks confidence. *Commonwealth v. Rodriguez*, 17 Mass. App. Ct. 547, 551 (1984). *Commonwealth v. Deagle*, 10 Mass. App. Ct. 748, 751 (1980). Based on the governing standard of review, the closeness of the evidence on self-defense, and the deficiencies described above, we conclude that the charge, considered as a composite, could have misled the jury with respect to the burden of proof on self-defense.[3] The defendant is entitled to a new trial on the manslaughter charge.

The judgment on indictment no. 9376 (manslaughter) is reversed, and the verdict set aside.[4]

*So ordered.*

---

[2]Defense counsel also filed written requests for jury instructions on the law of self-defense, see Mass. R. Crim. P. 24 (b), 378 Mass. 842-843 (1979), which were substantially correct, and which avoided the problems that occurred in the instructions given.

[3]The principles stated in *Francis v. Franklin*, 471 U.S. 807 (1985), see *Commonwealth v. Repoza*, 400 Mass. 516, 520 (1987), also may apply to the instructions. In view of our analysis, we do not have to reach the issues presented by the *Francis* case. We also need not consider the claimed infirmities in the judge's instructions on the presumption of innocence.

[4]Although the Appeals Court affirmed judgments on two indictments — no. 9376 (manslaughter) and no. 9377 (unlawfully carrying a firearm) — and defendant's request for further appellate review was granted with reference to both, defendant's argument and request for relief in his brief submitted to this court refer only to the first indictment. Consequently, we review only the judgment on indictment no. 9376 (manslaughter). The judgment on indictment no. 9377 (unlawfully carrying a firearm) is left to stand.