COMMONWEALTH vs. RACHAEL KIVLEHAN
(and five companion cases[1]).

No. 01-P-1583.

Middlesex. February 3, 2003. - April 16, 2003.

Present: GREENBERG, DOERFER, & KAFKER, JJ.

*Assault and Battery. Assault and Battery by Means of a Dangerous Weapon. Disturbing the Peace. Defense of Others. Practice, Criminal, Instructions to jury. Evidence, Prior misconduct.*

At the trial of criminal complaints charging assault and battery by means of a dangerous weapon, the judge's failure to give the jury an instruction on the defense of another created a substantial risk of a miscarriage of justice, where, despite the fact that counsel for the defendant did not specifically use the words "defense of another" during their presentation to the jury, the evidence, viewed in the light most favorable to the defendants, was sufficient to raise the issue. [795-796]

At the trial of a criminal complaint alleging assault by means of a dangerous weapon (a thrown chair), the judge properly denied the defendant's motion for a required finding of not guilty, where the fact that another individual may have had the opportunity to perform the act that the defendant was charged with related only to the weight of the evidence, and was a question for the jury. [797]

The judge at the trial of a criminal complaint alleging assault and battery properly instructed the jury on the use of deadly force. [797]

At a criminal trial, the judge properly excluded evidence of the victim's alleged prior acts of violence toward one of the defendants, the details of which allegedly were contained in another defendant's three recorded emergency telephone calls to the police, where the telephone calls contained no evidence of any specific acts of violence by the victim against the one defendant, but were hearsay reports of nonviolent, albeit troubling, activity. [797-798]

COMPLAINTS received and sworn to in the Concord Division of the District Court Department on May 3, 2001.

The cases were tried before *Stephen S. Ostrach,* J.

[1]One of the companion cases is against Rachael Kivlehan, three are against Kelly Kivlehan and one is against Sherri Ann Kivlehan.

*Cynthia A. Vincent* for Sherri Ann Kivlehan.

*Jennifer H. O'Brien* for Kelly Kivlehan.

*Charlene Colt* for Rachael Kivlehan.

*Alice E. Casey*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. During the course of their jury trial on complaints charging, inter alia, assault and battery by means of a dangerous weapon and assault and battery on the complainant, Flora Perez, there was evidence that the defendants, Kelly Kivlehan (Kelly) and his mother, Sherri Ann Kivlehan (Sherri Ann), were coming to the aid of another member of their family, the third defendant, Rachael Kivlehan (Rachael). The trial judge failed to instruct the jury on the defense of another. We think that not allowing the jury to consider this defense, particularly where there was evidence that the mother and son reasonably believed that the complainant Perez was menacing Rachael, was an error that requires a new trial on the relevant convictions.

In addition, Rachael challenges the judge's exclusion of specific acts of violence by Perez and claims that the judge's instruction on self-defense in her case was flawed. Kelly also claims that the judge's denial of his motion for a required finding of not guilty on the complaint charging assault and battery by means of a dangerous weapon (a chair) was erroneous. We conclude that these points are without merit.

1. *Facts*. An argument between Rachael and Perez, apparently fueled by animosity over Perez's former (and Rachael's present) boyfriend, burst into violence at the Kivlehan home on Railroad Street in Maynard. Just before the hostilities erupted at about 7:00 P.M., Perez went to visit a friend and saw Rachael on the front steps of the Kivlehan home nearby. Angry words were exchanged. There was conflicting evidence regarding who struck first, but according to Cheryl Lucas, who stood nearby, Perez had the best of it. Rachael was "getting her ass kicked," and retreated toward her house as Perez advanced. Russell Miller testified that three or four women then rushed the house, swinging with their fists. At this point, Rachael's brother, Kelly, and

her mother, Sherri Ann, joined the fray. Kelly was wielding some sort of baseball bat.[2]

Perez testified that Rachael held the screen door to the Kivlehans' front porch area open while Kelly and Sherri Ann pushed Perez inside. Kelly barred the door. Sherri Ann and Rachael hit Perez until Kila Lucas and her mother, Cheryl, came to the rescue, pried the door open, and dragged Perez back out. Kelly hurled a chair at them, but Cheryl Lucas caught it in the air before it struck anyone. By this time, a crowd of about forty neighbors had gathered around the Kivlehan residence.

There was evidence that Sherri Ann had called the Maynard police three times for pacification that evening. Unfortunately, by the time police arrived, all of the above had already transpired.

The defendants appeal from the following convictions for their parts in the fracas: Rachael, assault and battery and disturbing the peace; Kelly, assault and battery by means of a dangerous weapon (a "wiffle ball" bat), assault by means of a dangerous weapon (a chair), and assault and battery; and Sherri Ann, assault and battery.[3]

*2. Lack of a jury instruction with respect to Kelly and Sherri Ann.* A defense of others instruction is appropriate where the evidence, viewed in a light most favorable to the defendant, supports the argument that (1) a reasonable person in the defendant's position comprehends his or her intervention is necessary for the protection of the third person and (2) in the circumstances as perceived by that reasonable person, the third person would be justified in using such force to protect himself. See *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 125 (1995). Where the facts of the case permit, a judge is required to instruct on that theory even in the absence of a request from the defendant. See *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 750-751 (1980). Not surprisingly, the Commonwealth

---

[2]Perez testified on direct examination that it was a wooden bat, but had previously said it was a plastic "wiffle ball" bat, which is what police observed Kelly holding when they arrived, and what he was charged with wielding.

[3]Several other convictions growing out of the incident are not before us in this appeal. The defendants were acquitted of several counts of assault (and one of assault and battery) by means of a dangerous weapon (a knife).

concedes these principles. Rather, the Commonwealth argues that the defense of others was not the theory pursued by either defendant. See *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. 129, 130-131 (1997) (no error in judge not charging jury, sua sponte, on self-defense, where defendant did not rely on self-defense at trial). We do not agree.

Although it is true that neither trial counsel for Kelly nor counsel for Sherri Ann specifically utilized the words "defense of another" during their presentations to the jury, this cannot be the litmus test. "A criminal defendant is entitled to an instruction on self-defense if the evidence, viewed in the light most favorable to him, is sufficient to raise the issue." *Commonwealth* v. *Gill*, 37 Mass. App. Ct. 457, 461 (1994), quoting from *Commonwealth* v. *Burbank*, 388 Mass. 789, 794 (1983). It is important to note that once a claim of self-defense or defense of another is viably woven into the evidentiary tapestry, the burden shifts to the Commonwealth to disprove such affirmative defense. See *Commonwealth* v. *Albert*, 391 Mass. 853, 857 (1984). The record in this case satisfies that imperative.

At trial, both Perez and Cheryl Lucas testified that the fight between Perez and Rachael began on the street but moved to the Kivlehan premises as Rachael backed up in retreat and Perez continued to attack. In closing, counsel for Sherri Ann asked the jury, "Would somebody call the police to come to their house three times if they were going to beat up somebody in their own house?" Counsel for Rachael reminded the jury that Sherri Ann had called police three times to say, "There's a group of people out here that are attacking my daughter and my family." This case clearly differs from *Commonwealth* v. *Hakkila*, *supra*. Had the jury in this case been given the defense of another instruction, the jury's focus would more than likely have been on whether the defendants' use of force against Perez was justified in the circumstances of an attack on Rachael. In a light most favorable to the defendants, depending on which testimony it found credible, a jury could have so determined. On the evidence presented, we conclude that the lack of instruction on defense of another gave rise to a substantial risk of a miscarriage of justice with respect to the assault and battery cases against Kelly and Sherri Ann.

3. *Remaining arguments.* With respect to Kelly's conviction on the charge of assault by means of a dangerous weapon, the chair thrown at Perez and Cheryl Lucas, he contends that because no one actually saw him throw the chair, and because his mother, Sherri Ann, and sister, Rachael, were nearby when it was hurled, either one of them could have been the guilty party. He claims the judge erred in denying his motion for a required finding of not guilty. On this issue, we must determine whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). While it is true that neither Perez nor Cheryl Lucas actually saw Kelly complete the act in question, such evidence is not required to avoid a required finding. Cheryl Lucas testified that Kelly was standing on the steps from which the chair was thrown. No one from the crowd on the street, nor another Kivlehan family member, was situated on the steps at that time. The fact that another individual may have had the opportunity to perform the act that the accused is charged with relates only to the weight of the evidence, and is a question for the jury. See *Commonwealth* v. *Casale*, 381 Mass. 167, 175-176 (1980). The denial of the motion for a required finding was proper.

Rachael argues that the judge improperly instructed the jury by giving a "deadly force" instruction in connection with self-defense on the assault and battery charge, thereby lowering the Commonwealth's burden of proof. She claims the judge instructed that the Commonwealth had to prove that Rachael did not have a "reasonable belief that she was being attacked *and in imminent danger of death or serious bodily injury*" (emphasis added). The transcript does not support this claim. The judge instructed that the Commonwealth had to prove only that Rachael did not reasonably believe herself to be "in immediate danger." The "danger of death or serious bodily injury" element to which Rachael objects simply was not given.

Finally, Rachael argues that the judge erroneously excluded evidence of Perez's alleged prior "specific acts of violence" toward Rachael, the details of which allegedly were contained in Sherri Ann's three recorded emergency telephone calls to the

Maynard police at the time the fighting between Rachael and Perez initially caught her attention. The record does not reveal the judge's ground for excluding two of the telephone calls; one was admitted as an excited utterance. Even so, the record is sufficient to establish that the defendant's argument on appeal has no merit. The telephone calls contain no evidence of any specific acts of violence by Perez against Rachael. At most, they suggest that some "truck full of girls . . . must be getting ready to start trouble," and that they entered the Kivlehan home uninvited. Unlike the cases of *Commonwealth* v. *Fontes*, 396 Mass. 733, 735-736 (1986), and *Commonwealth* v. *Pidge*, 400 Mass. 350, 352-353 (1987), both cited for support by Rachael, neither of these allegations amounts to a specific instance of violent conduct of which the defendant was aware. Rather, the calls were hearsay reports of nonviolent — albeit troubling — activity.

The judgments of conviction against the defendant, Kelly Kivlehan, of assault and battery by means of a dangerous weapon (a "wiffle ball" bat) and of assault by means of a dangerous weapon (a chair) upon Flora Perez, and of assault and battery upon Flora Perez, are reversed. The judgment of conviction of assault and battery upon Flora Perez against the defendant, Sherri Ann Kivlehan, is reversed. The judgments of conviction against the defendant, Rachael Kivlehan, for assault and battery upon Flora Perez and disturbing the peace, are affirmed.

*So ordered.*